STATE OF MAINE                                          SUPERIOR COURT
                                                          CIVIL ACTION
YORK, ss.                                           DOCKET NO. CV-05-310
                                                     *Ai    -YoR- 5/6/2010*

TIMOTHY O'CONNOR, as Personal
Representative of the Estate of
TRACY O'CONNOR,

             Plaintiff

v.                                          **ORDER ON PENDING MOTIONS**

COUNSELING SERVICES, INC.,
et al.,

             Defendants

This is a tragic case where a young woman died after taking an excess of prescription medications. Her husband has, as personal representative of her estate, filed a four-count complaint dated November 25, 2008 against Counseling Services, Inc. (CSI), Theresa Dube, LCPC, and Brendan Kirby, M.D. The complaint alleges negligence in each of the four counts claiming negligent evaluation and assessment, negligent failure to hospitalize, negligent failure to warn and negligent failure to establish safety precautions respectively. Defendant Kirby and Defendants CSI and Dube have filed motions for summary judgment. It is clear that the failure to hospitalize and failure to warn her husband, over her objection, are claims that are not permitted.

Tracy O'Connor had been a patient of CSI and had received services from Ms. Dube and Dr. Kirby. On the morning of October 4, 2002 she informed Ms. Dube that she was hearing voices telling her to harm her daughter. Ms. O'Connor sought assistance from CSI and it was agreed that she would come to their office. After being

at CSI for several hours it was decided that Ms. O'Connor would not be involuntarily hospitalized and was allowed to leave. After being released Ms. O'Connor ingested too much medication and died later that day at age 23.

Whether the case can proceed is determined by whether the entire interaction among CSI, and Dr. Kirby and Ms. Dube who worked there, and Ms. O'Connor on October 4, 2002 is considered as part of an involuntary commitment evaluation or whether the interaction is more properly separated into some events dealing with involuntary commitment and some dealing with their on going relationship with Ms. O'Connor as an established patient.

The case of *Doe v. Graham*, 2009 ME 88, ¶¶16-17 answers the question. That case affirmed prior holdings that "discretionary function immunity (applies) to the involuntary commitment evaluation process ...." At ¶16. Paragraph 17 states, "Limiting the application of the Act to the ultimate commitment determination, as *Doe* suggests, would expose physicians and their staff, along with the state facilities and private hospitals that employ them, to liability for any conduct occurring during the examination process and would thwart the very policies that the Legislature has deemed vital."

Here the primary purpose of the visit to CSI on October 4, 2002 was to determine whether Ms. O'Connor should be involuntarily committed. The question of the correctness, in retrospect, of the difficult decision balancing personal liability and personal safety is protected from suit by legislative action and judicial interpretation.

I conclude that, while one could compartmentalize the afternoon's events into those dealing solely with involuntary hospitalization, those dealing both with involuntary hospitalization and continuing treatment and those dealing solely with Ms.

2

O'Connor's well being when not hospitalized, the purpose of the statute and the holding in *Doe* suggests that one should not attempt such a task.

The central issue before CSI and its staff was whether involuntary commitment proceedings should be started. That is often a difficult decision with no clear ability for a clinician to correctly predict what the patient will do or what the outcome of any decision will be.

As the decision not to commence involuntary commitment proceedings is protected from suit then the ancillary decisions as to what protection should be afforded or advice given to a patient who is not being committed has to likewise be protected from suit. It is all part of a single process.

It is very tragic what happened. However suit may not be brought against CSI, Ms. Dube or Dr. Kirby regardless of how the afternoon's events are characterized.

The entry is:

The motion of defendant Brendan Kirby, M.D. for summary judgment is granted. Judgment for Brendan Kirby on the complaint.

The motion of defendants Counseling Services, Inc. and Theresa Dube, LCPC for summary judgment is granted. Judgment for Counseling Services, Inc. and Theresa Dube on the complaint.

Plaintiff's motion to strike defendant Kirby's reply statement of material facts is denied.

Dated:      May 6, 2010

Paul A. Fritzsche
Justice, Superior Court

ATTORNEY FOR PLAINTIFF:
JOHN P. FLYNN, III
DANIEL G LILLEY LAW OFFICE
PO BOX 4803
PORTLAND ME   04112

ATTORNEY FOR DEFENDANT BRENDAN KIRBY, MD:
WENDELL LARGE
RICHARDSON WHITMAN LARGE & BADGER
PO BOX 9545
PORTLAND ME   04112-9545

ATTORNEY FOR DEFENDANTS COUNSELING SERVICES INC AND THERESA DUBE LCPC:
MARK LAVOIE
CHRISTOPHER TAINTOR
NORMAN HANSON & DETROY
PO BOX 4600
PORTLAND ME   04112-4600

ATTORNEY FOR DEFENDANT SOUTHERN MAINE MEDICAL CENTER:
KAREN FRINK WOLF
FRIEDMAN GAYTHWAITE WOLF & LEAVITT
PO BOX 4726
PORTLAND ME   04112-4726